UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON ISAAC RUTHERFORD, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-040-PPS-JEM |
| BRIAN EGLISH,[1] | |
| Defendant. | |

OPINION AND ORDER

Brandon Isaac Rutherford, a prisoner without a lawyer, filed a complaint. [ECF 1.] Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On October 23, 2024, at 2:30 A.M., Rutherford was escorted to the shower area in the Miami Correctional Facility from his "lockdown dorm" by Officer B. Hayes. [ECF 1

---

[1] The Warden of the Miami Correctional Facility is Brian English, but for purposes of this order, I will use the spelling that Rutherford lists in his complaint.

at 2.] There was a "big hole in the shower," and when the door was opened "someone came out [of] the hole" and stabbed Rutherford three times in the back and one time in the arm. [*Id.*] Officer Hayes watched while this happened. [*Id.*] Rutherford was taken to medical where they bandaged his wounds and said he "will be fine." [*Id.*] He was then "put in another shower on the other side of the house." [*Id.*] Rutherford believes he should not have been taken to the original shower until the hole had been repaired. He has sued Warden Brian Eglish for monetary damages.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted). That said, not every such violent altercation violates the Constitution. *See Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). "Rather, only deliberate indifference to an inmate's wellbeing is actionable: a prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks, brackets, and citations omitted). Accordingly, when an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and

identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (citation omitted).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005) (citation omitted); *see also Thomas v. Dart*, 39 F.4th 835, 843 (7th Cir. 2022) (quoting *Brown* and noting that a "bare 'increased risk' [associated with mental health issues] does not necessarily correlate to a 'substantial risk'"). Rather, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citation omitted). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Here, Rutherford doesn't mention Warden Eglish anywhere in the body of the complaint. The claims against him may be dismissed for this reason alone, as supervisor liability is insufficient to state a claim. *See e.g., Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 594–95 (7th Cir. 2009) (both noting that

3

liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). Moreover, the facts suggest the attack happened suddenly when another inmate jumped out of the hole. Nothing in the complaint leads me to believe it could have been prevented by the Warden. Even assuming the Warden knew a hole existed in the shower, Rutherford hasn't plausibly alleged the hole itself created a "substantial risk" such that he knew, or should have known, an attack was almost certain to materialize. *See Brown*, 398 F.3d at 911; *Thomas,* 39 F.4th at 843; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law.") (emphasis in original).

This complaint does not state a claim for which relief can be granted. But Rutherford will be given an opportunity to file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). I note that Rutherford has chosen not to sue Officer Hayes in the present version of his complaint. Unlike the Warden, it seems more plausible that Hayes could have prevented the attack, or at least lessened the severity of it. But whether such a claim is viable will all depend on the allegations in the amended complaint, should Rutherford choose to file one. To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint**

4

form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

Accordingly:

(1) Brandon Isaac Rutherford is GRANTED until **February 20, 2025**, to file an amended complaint; and

(2) Brandon Isaac Rutherford is CAUTIONED that if he does not respond by the deadline, this case will be dismissed pursuant to 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on January 17, 2025.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT